UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALEXANDRA BYLER, KAY CATLIN,
JENNIFER GRAVES, and ELIZABETH
O'LEARY,

                                   Plaintiffs,

v.

DELUXE CORPORATION, d/b/a
DELUXE CHECK PRINTERS,

                                   Defendant.

Case No.:  16cv493 AJB (JLB)

**ORDER:**
**(1) GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION;**

**(2) GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS FOR FAILURE TO STATE
A CLAIM; AND**
**(Doc. No. 22)**

**(2) DENYING MOTION TO
TRANSFER VENUE**
**(Doc. No. 5)**

Presently before the Court is Defendant Deluxe Corporation, d/b/a Deluxe Check Printers' ("Defendant") motion to transfer venue, (Doc. No. 5), and motion to dismiss, (Doc. No. 22). Named Plaintiffs Alexandra Byler, Kay Catlin, Jennifer Graves, and Elizabeth O'Leary (referred to collectively as "Plaintiffs") oppose the motions. For the reasons set forth below, Defendant's motion to dismiss for lack of subject matter

1

jurisdiction is **GRANTED IN PART** and **DENIED IN PART** in part, its motion to dismiss for failure to state a claim is **GRANTED IN PART** and **DENIED IN PART**, and its motion to transfer venue is **DENIED**.

## I.   Background

### A. General Allegations

Defendant, under the brand name Deluxe, sells checks to account holders at various banks.[1] (Doc. No 19 at ¶ 16.) Customers can order checks from Defendant through their bank and have the checks printed and delivered to them, or customers can order new and replacement checks via the Defendant's website.[2] (*Id*. at ¶ 17–18.) Plaintiffs, on behalf of themselves and other similarly situated consumers, allege they were charged excessive, deceptive, unfair, and unethical fees for the delivery of new and replacement checks by Defendant. (*Id*. at ¶ 15.) The shipping costs at issue are for the following shipping options: (1) "Basic: Standard Delivery": $8.00; (2) "Better: Four-Day Express Delivery": $32.45; and (3) "Best: Checks Next Day": $49.60. (*Id*. at ¶ 23.)

Plaintiffs allege that these charges violated the California Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq*.; the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*.; the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS505/1, *et seq*.; the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010, *et seq*.; the Massachusetts Consumer Protection Act, Massachusetts General Laws, Chapter 93A ("ch. 93A"); and similar consumer protection statutes of other states. (*Id*. at ¶ 1.) Plaintiffs' main contention is that the shipping and delivery charges are not reasonably related to the costs Defendant incurred in delivering or shipping the checks to consumers. (*Id*.) Plaintiffs allege that

---

[1] The relevant banks include U.S. Bank in San Diego, California; BMO Harris Bank in Chicago, Illinois; Commerce Bank in St. Louis, Missouri; and Lowell FiveBank in Dracut, Massachusetts. (*Id*. at ¶ 16.)

[2] www.deluxe.com (*Id*. at ¶ 18.)

Defendant maintains other websites under other brand names besides Deluxe, which use the same manufacturing facilities and provide the same delivery services as Defendant does for its Deluxe brand checks. Plaintiffs assert that Defendant charges significantly less for the same service through those alternative websites, which, according to Plaintiffs, establishes that the charges assessed on Deluxe's website do not represent the actual charges incurred in shipping and handling. (*Id.* at ¶ 29–33).[3]

B. Named Plaintiffs' Claims

Plaintiff Alexandra Byler has a checking account with U.S. Bank in San Diego, California. (*Id.* at ¶ 59.) On or about February 2013, Plaintiff Byler ordered checks using Defendant's website, and was charged thirty-four dollars and ninety-five cents ($34.95), of which eight dollars ($8.00) represented the delivery charge. (*Id.*)

Plaintiff Kay Catlin has a checking account with BMO Harris Bank in Chicago, Illinois. (*Id.* at ¶ 60.) On or about February 10, 2015, Plaintiff Catlin ordered checks using Defendant's website, and was subsequently charged thirty dollars and twenty-five cents ($30.25), of which eight dollars ($8.00) represented the delivery charge. (*Id.*)

Plaintiff Jennifer Graves has a checking account with Commerce Bank in Missouri. (*Id.* at ¶ 61.) On or about September 11, 2012, Plaintiff Graves entered Commerce Bank and ordered checks for personal, family, or household purposes. (*Id.*) Plaintiff Graves received a bill for forty dollars ($40.00), of which an undisclosed portion was for delivery. (*Id.*) On July 1, 2014, Plaintiff Graves again ordered checks for personal, family, or household purposes from Defendant through her bank; she was charged sixteen dollars and fifty cents ($16.50) for the checks and an additional seven dollars ($7.00) for Standard Delivery. (*Id.* at ¶ 62.)

---

[3] Defendant has a "Checks Unlimited" website, which provides the following shipping options and charges: (1) "Standard" (up to 10 business days): $0.00; (2) "UPS Trackable" (4-6 business days): $8.95; (3) "UPS Ground" (2-5 business days): $10.95; and (4) "UPS 2-Day" (2 business days): $11.95. (Doc. No. 19 at ¶¶ 30–31.) These prices all include a handling fee of $3.45 per box. (*Id.* at ¶ 30.)

16cv493 AJB (JLB)

Plaintiff Elizabeth O'Leary has a checking account with Lowell Five Cent Savings Bank in Dracut, Massachusetts. (*Id.* at ¶ 63.) On or about September 18, 2012, Plaintiff O'Leary ordered a box of Defendant's checks to be delivered to her home. (*Id.*) Plaintiff O'Leary was charged thirty-two dollars ($32.00), of which seven dollars ($7.00) represented the delivery charge. (*Id.*)

C. <u>Prior Procedural Background Relevant to This Proceeding</u>

Two of the named plaintiffs in this case originally filed suit against Defendant in separate cases in the Eastern District of Missouri. (*See* Doc. No. 5-8 at 2; Doc. No. 5-10 at 2.) Plaintiffs Catlin and Graves (hereafter referred to as "Missouri Plaintiffs") filed their claims separately in the Eastern District of Missouri, but the claims were eventually consolidated with Graves' case designated as the lead case. (*See* Doc. No 5-8 at 5; Doc. No. 5-10 at 3.) Following extensive litigation, on February 2, 2016, Missouri Plaintiffs requested that Defendant consent to a dismissal of the Missouri proceedings without prejudice. (*Id.*) At that time, the Missouri Plaintiffs expressed their intention to refile their claims in this District. (*Id.*) Defendant declined to agree and informed the Missouri Plaintiffs that it would oppose dismissal. The Missouri Plaintiffs thereafter moved for voluntary dismissal without prejudice in accordance with Federal Rule of Civil Procedure 41(a)(2). (Doc No. 5-1 at 6; Doc. No. 21 at 8.) Defendant did not oppose or otherwise challenge Missouri Plaintiffs' request for a dismissal. (Doc. No. 31 at 9.) Accordingly, on February 23, 2016, the court granted the motion and dismissed the cases without prejudice. (*Id.*)

On February 25, 2016, two days after the dismissal of the Missouri proceedings, Plaintiffs Catlin and Graves added California Plaintiff Byler and Massachusetts Plaintiff Elizabeth O'Leary to the suit, and refiled in this District. (Doc. No. 1; Doc. No. 5-1 at 6.) Defendant now moves to transfer venue back to the Easter District of Missouri. (Doc. No. 5.) Additionally, Defendant moves to dismiss Plaintiffs' first amended class action complaint (FAC) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.   Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1)

### A. Rule 12(b)(1)

Federal subject matter jurisdiction is a threshold issue that goes to the power of the Court to hear a case. *Morongo Band of Mission Indians v. CA State Board of Equalization*, 858 F.2d 1376 (9th Cir. 1988). Rule 12(b)(1) permits a party to seek a dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction brought under Federal Rule of Civil Procedure 12(b)(1) may be either "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on subject-matter jurisdiction is based on the premise that the allegations in the complaint, accepted as true, are insufficient to invoke federal jurisdiction. *Id*. at 1039. By contrast, in a factual attack, "'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)).

Here, Defendant raises both a facial and factual challenge to the Court's subject matter jurisdiction. (*See generally*, Doc. No. 22-1 at 18–20.) Defendant's facial attack alleges that Plaintiffs' claimed injury is not facially plausible, and the factual attack alleges that Plaintiffs' allegations are too speculative. (*Id*. at 19–20.) Thus, the Court's inquiry is not limited to the pleadings in resolving Defendant's challenge to the Court's subject matter jurisdiction.

### B. Article III Standing

To sue in federal court, a plaintiff must establish standing under the "case or controversy" requirement under Article III of the U.S. Constitution. *Sec. & Exch. Comm'n v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972). Standing is an essential element of a federal court's subject matter jurisdiction. *City of S. Lake Tahoe v. California Tahoe Reg'l Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980). Three elements must be satisfied for a plaintiff to have standing under Article III: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent;

(2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 560–61). Because Article III standing is a threshold jurisdictional requirement that can be raised at any time during a suit, any jurisdictional issues must be settled prior to the court considering the merits of any case. *Villegas v. United States*, 963 F. Supp. 2d 1145, 1153 (E.D. Wash. 2013).

### C.   Discussion

Defendant contends that Plaintiffs lack standing because they have not alleged a cognizable legal injury. (Doc. No 22 at 2.) Defendant also asserts the Court should dismiss Plaintiffs' claims to the extent they are based on charges that were not paid, and seek recovery under the laws of states where they do not reside. (*Id*.) Finally, Defendant argues Plaintiffs lack standing to seek injunctive relief because Plaintiffs have not alleged a threat of future injury. (*Id*.) Each argument is addressed in turn below.

### 1.  Injury in Fact Requirement

Defendant first argues that Plaintiffs fail to allege an injury in fact that is concrete and particularized, and actual or imminent. (Doc. No. 22-1 at 18.) Defendant also asserts that there is not a sufficient causal connection between Defendant's allegedly wrongful conduct and the harm alleged in the FAC. (*Id*.) Plaintiffs respond to this argument by asserting that they have suffered a tangible injury and thus have the requisite standing to sue. (Doc. No. 25 at 18–19.)

Under Article III, facts establishing that a plaintiff has lost money or property as a result of a defendant's actions are sufficient to show an injury in fact. *Boswell v. Costco Wholesale Corp.*, No. SACV160278, 2016 WL 3360701, at *5 (C.D. Cal. June 6, 2016). For there to be a causal connection between the injury in fact and the conduct the plaintiffs are complaining of, the injury must be fairly traceable to the challenged action of the defendant; this means that the action cannot be the result of some independent action by some third party that is not before the court. *Lujan*, 504 U.S., at 560.

6

The Court finds Defendant's arguments unpersuasive. For an alleged injury in fact to be sufficient under Article III standing, the injury must be concrete and particularized. *Spokeo, Inc., v. Robbins*, 136 S. Ct. 1540, 1548, *as revised* (May 24, 2016). Stated another way, in order for an injury to be concrete, the injury "*must actually exist*." *Id.* at 1548 (*emphasis added*).

Defendant relies on *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) and *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962 (C.D. Cal. 2014). In *Birdsong*, the plaintiffs purchased iPods that came with detachable "earbud" headphones. *Birdsong*, 590 F.3d at 957. The plaintiffs claimed that the iPod was defective because it posed an unreasonable risk of causing noise-induced hearing loss to its users. *Id.* at 956. However, the plaintiffs did not claim that they actually suffered or would imminently suffer from any hearing loss from their iPods. *Id.* at 960. The *Birdsong* court held that plaintiffs lacked standing because their claimed injury is not concrete and particularized, but instead purely hypothetical. *Id.* at 960–61. The court concluded the plaintiffs lacked standing because Apple never made any representations that iPod users could safely listen to music at high volumes for extended periods of time. *Id.*

In *Tae Hee Lee*, the plaintiffs alleged that the pre-collision braking system available in certain vehicles only achieved a "negligible" reduction in speed and was ineffective in preventing collisions. *Tae Hee Lee*, 992 F. Supp. 2d at 968. Neither of the named plaintiffs had negative experiences with the pre-collision braking feature, despite the allegations in the complaint. *Id.* The court held that the plaintiffs did not have standing because the plaintiffs: (1) did not allege an actual economic injury; (2) experienced no problems with the system; and (3) failed to identify any false representations about the braking feature. *Id.* at 972.

Unlike the hypothetical injuries seen in *Birdsong* and *Tae Hee Lee*, the injury here is a tangible monetary loss. The facts of this case are not analogous to those in *Birdsong* and *Tae Hee Lee*. Here, Deluxe checks are sold on www.deluxe.com where "Basic: Standard Delivery" option is priced at $8.00. (Doc. No 19 at 6.) Deluxe checks are also

sold through a "Checks Unlimited" website. (*Id*. at 8.) On the Checks Unlimited website, "Standard" delivery is $0.00 accompanied by a handling fee of $3.45 per box. (*Id*.) Considering the extrinsic evidence attached in Plaintiffs' FAC, the injury asserted is the difference in the two prices and the monetary loss Plaintiffs suffered by paying the higher, and allegedly inflated, shipping costs. (*Id*. at 5–9.) Because the loss alleged is a tangible economic loss, the injury in fact element for standing is satisfied. *See Tourgeman v. Collins Fin. Servs., Inc.*, No. 08CV01392, 2009 WL 6527758, at *7 (S.D. Cal. Nov. 23, 2009) (noting out-of-pocket expenses or money spent is a financial harm that constitutes an injury in fact for purposes of standing). Accordingly, Defendant's challenge to Plaintiffs' allegations of injury in fact fails.

Turning to Defendant's causation argument, Defendant argues that the harm alleged by Plaintiffs is not causally connected to Defendant's conduct. (Doc. No. 22-1 at 19–20.) Defendant contends that the Plaintiffs' banks set the prices, not Deluxe. (*See generally* Doc. No. 5-2 at 3–4.)

When determining whether a plaintiff has standing, the causal connection cannot be too speculative and it cannot rely on conjecture about the behavior of other parties. *Coal for a Sustainable Delta v. John McCamman*, 725 F. Supp. 2d 1162, 1192 (E.D. Cal. 2010) (citing *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005)). Causation is lacking when an injury caused by a third party is too tenuously connected to the defendant's act. *Sustainable Delta*, 725 F. Supp. 2d at 1192 (citing *Citizens for Better Forestry v. U.S. Dept. of Agric.*, 341 F.3d 961, 975 (9th Cir. 2003)). However, the chain of causation does not need to be airtight and it may have more than one link. *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1172 (E.D. Cal. 2012). Thus, a plaintiff only has to establish that its theory of causation is plausible. *San Luis*, 905 F. Supp. 2d at 1172; *Nat'l Aubudon*, 307 F.3d at 849. When a causal relationship is deemed probable, then the plaintiff has standing. *Id.*; *Envtl. Def. Ctr. v. EPA*, 344 F. 3d 832, 867 (9th Cir. 2003).

Plaintiffs have satisfied this element. As noted in the Declaration of Wendy Blaeser, Deluxe has authority over the shipping costs. (*See generally* Doc. No. 5-2 at 3–4.) Thus, while Plaintiffs' respective banks may play a role in determining the shipping costs, that does not negate the allegations asserted against Defendant. Plaintiffs ordered checks through their banks, and the checks were printed and delivered by Deluxe. (Doc. No. 19 at 5.) Plaintiffs ordered their checks directly through the Deluxe website (www.deluxe.com) or they were directed to Deluxe's website via their bank's website. (*Id.*) The causal connection here is certainly plausible and Defendant's challenges in this regard fail. Accordingly, Defendant's challenges to Plaintiffs' allegations regarding injury in fact are **DENIED**.

### 2. Claims Premised on Charges Plaintiffs Did Not Pay and Brought Under State Statutes Where Plaintiffs Do Not Reside

Defendant next argues that Plaintiffs cannot show any monetary injury resulting from the charges for "Better: Four-Day Express Delivery: $32.45" or "Best: Checks Next Day: $49.60," as none of the named Plaintiffs paid those fees. (Doc No. 22-1 at 15). Defendant similarly argues that Plaintiffs lack standing to assert claims under the laws of states where Plaintiffs do not reside presently, and did not reside at the time checks were purchased from Defendant. (*Id.* at 12.) According to Defendant, in a proposed class action proceeding such as this one, named plaintiffs must have suffered an injury in a particular state to sue under that state's laws. (*Id.*)

In opposition, Plaintiffs argue it is premature to determine whether the named Plaintiffs may represent consumers in other states with similar consumer protection statutes. (Doc. No. 25 at 20.) Plaintiffs acknowledge that courts vary in determining whether the arguments raised by Defendant are addressed as a standing issue or a class certification issue, but urge the Court to determine the issue is appropriate for consideration in the class certification context. (*Id.* at 20–24.)

The Court need not make any such determination here, as it finds Plaintiffs' allegations of injuries are sufficiently similar such that Plaintiffs have standing to

represent the interests of potential class members who were charged different shipping costs, and who may seek recovery under various consumer protection statutes. Generally, a court must establish that it has jurisdiction under Article III before getting to the merits of any claim. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).  However, if class certification issues are "logically antecedent" to Article III concerns, then the court may appropriately dispose of them before standing. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997); *Ortiz* 527 U.S. at 831. Issues are considered to be logically antecedent when the issues were only such because they "would not exist but for the class-action certification." *Amchem*, 521 U.S. at 612. Regardless, there is no rigid, hardline rule that requires or precludes the consideration of class certification prior to standing. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015).

Because no bright line rule exists, three distinct approaches have emerged in resolving standing in the class action context. Under the first approach, when a plaintiff asserts claims based on products the plaintiff did not specifically purchase, claims relating to the unpurchased products are dismissed for lack of standing. *See, e.g.*, *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 569 (N.D. Cal. 2013).

Under the second approach, courts consider whether there is sufficient similarity between the products purchased and those products not purchased by the named plaintiffs. *Id*. If there is sufficient similarity, then the claims should not be dismissed for lack of standing. *Id*.

Under the third and final approach, as long as the named plaintiff has individual standing to bring claims regarding anything actually purchased, the question of whether a proposed class can bring claims related to other products is an issue that is more appropriately addressed at the class certification stage. *Id*. at 569–70. The rationale behind this approach is that representative parties that have a direct and substantial interest in the proceeding have standing and the question of whether they may be allowed to bring claims on behalf of others who have similar, but not completely identical interests, depends on typicality and adequacy of representation. *Id*.

1      Ultimately, however, a court has discretion to adopt any of the three approaches, as

2  no clear body of precedent governs. *See In re Anthem, Inc. Data Breach Litig.*, No

3  15MD02617, 2016 WL 589760 at *6 (N.D. Cal. Feb. 14, 2016); *see also In re Carrier

4  IQ, Inc.*, 78 F. Supp. 3d at 1074 ("Indeed, a number of courts, regardless of which

5  analysis they have undertaken first, have couched their decision as one of discretion.").

6  Courts have additionally acknowledged that whether to resolve standing issues at the

7  class certification stage should be determined on a case-by-case basis. *See In re Anthem,

8  Inc., Data Breach Litig.*, 2016 WL 589760 at *6.

9      Here, the crux of Plaintiffs' claims is that Defendant over-charges Plaintiffs for

10  shipping costs when they order checks either through their banks or directly from

11  Deluxe.com. (*See generally*, Doc. No 19 at ¶¶ 29–33.) State-to-state and claim-to-claim

12  the product ordered and the service provided is the same. Likewise, the wrong alleged by

13  each plaintiff—unlawful and unfair pricing—is the same regardless of the amount of the

14  alleged overcharge. Therefore, in exercising its discretion, the Court finds there is

15  sufficient similarity in named and prospective plaintiffs' claims that a dismissal for lack

16  of standing would be inappropriate at this time. *See Carrier*, 78 F. Supp. 3d at 1075

17  ("Article III allows the district court to exercise discretion in ordering the determinations

18  of class certification and standing . . . ."). Challenges to the adequacy of named Plaintiffs'

19  representation of other class members' interests may be appropriately addressed at the

20  class certification stage. *See, e.g.*, *Rojas v. General Mills, Inc.*, No. 12CV5099, 2014 WL

21  1248017, at *9–10 (N.D. Cal. Mar. 26, 2014 (deferring questions of similarity to the class

22  certification stage and denying a motion to dismiss for lack of standing); *Burton v.

23  Gerber Products Co.*, No. 12CV2412, 2014 WL 172111, at *8 (N.D. Cal. Jan. 15, 2014)

24  (finding that the plaintiffs had standing to assert claims for unnamed class members

25  based on products not purchased because the products in questions were substantially

26  similar); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012)

27  (holding that a plaintiff may have standing to assert claims for unnamed class members as

28  long as the products are substantially similar); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d

984, 992 (E.D. Cal. 2012) (analyzing whether the plaintiff may be allowed to bring claims on behalf of others who have similar but not identical interests solely under Rule 23). Accordingly, Defendant's challenges to Plaintiffs' standing directed at claims brought on behalf of absent class members is **DENIED**.

### 3.  Plaintiffs' Request for Injunctive Relief

Defendant's final standing challenge is directed at Plaintiffs' claims for injunctive relief. Defendant contends Plaintiffs cannot demonstrate any real and immediate threat of repeated injury from Defendant's conduct because Plaintiffs have not alleged they would purchase Defendant's checks in the future. (Doc. No. 22-1 at 20–21.)

A plaintiff seeking injunctive relief must establish that he or she is "realistically threatened by a *repetition* of the violation" to establish the relief sought would redress the alleged injuries. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (emphasis in original); *see also Campion v. Old Republic Home Prot. Co.*, 861 F. Supp. 2d 1139, 1150 (S.D. Cal. 2012) ("Without a showing there is an actual and immediate threat that Plaintiff will be wronged again in the same way by Defendant, Plaintiff lacks standing under Article III to seek injunctive relief."). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Instead, a plaintiff must show that she faces imminent injury because of the defendant's conduct. *Id.* In the context of a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Strumlauf v. Starbucks Corp.*, No. 16CV01306, 2016 WL 3361842, at *3 (N.D. Cal. June 17, 2016) (quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)).

Plaintiffs urge the Court to adopt a different rule advanced in the context of consumer protection litigation, which does not require an assertion of future intent to purchase the allegedly offending product. (Doc. No 25 at 26–27.) As support for this

position, Plaintiff relies on *Henderson v. Gruma Corp.*, Case No. CV 10-04173, 2011 WL 1362188, at *7–8 (C.D. Cal. Apr. 11, 2011).

In *Henderson*, the plaintiffs argued that they were misled by the representations, omissions, and deceptive acts of the defendant. *Id.* at *7. The plaintiffs, however, had not alleged an intent to purchase the product in the future, and the defendant moved to dismiss the plaintiffs' claims for injunctive relief. *Id*. at *7. In ruling on the motion to dismiss, the court held that the fact a consumer may not purchase the offending product again does not deprive a plaintiff of the ability to seek injunctive relief on behalf of all consumers. *Id.* In articulating its decision, the court reasoned that to find otherwise would "thwart the objective of California's consumer protection laws." *Id*. The court therefore found the plaintiffs had standing to pursue injunctive relief, despite the fact that the plaintiff would not purchase the product in the future. *Id*. at *8 (holding that "plaintiffs, as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendants"). Several courts have adopted the reasoning set forth in *Hendersen*. *See e.g.*, *Larsen v. Trader Joe's Co.*, No. C11-05188, 2012 WL5458396, at *3–4 (N.D. Cal. June 14, 2012); *Kabbash v. Jewelry Channel, Inc. USA*, No CV154007, 2015 WL 6690236, at *6–7 (C.D. Cal. Nov. 2, 2015); *Koehler v. Litehouse, Inc.*, No CV12-04055, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012).

Other courts, however, have strictly applied Ninth Circuit authority, and declined to find standing to pursue injunctive relief absent allegations of future injury. For example, in *Burns v. Tristar Products, Inc.*, No. 14CV749, 2014 WL 3728115 (S.D. Cal. July 25, 2014), the court declined to follow the reasoning articulated in *Henderson*. The court in *Burns* acknowledged that "Supreme Court and Ninth Circuit precedent are clear that for a plaintiff to have standing to pursue injunctive relief, there must be a 'real and immediate threat of repeating injury.'" *Id*. at *3 (quoting *Lujan*, 504 U.S. at 560). The court went on to say that it is not just the presence or absence of a past injury that determines whether a plaintiff has Article III standing to seek injunctive relief; it is the,

"imminent prospect of future injury." *Id*. (quoting *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014)).

Because Ninth Circuit authority is clear, as noted in *Burns*, the Court declines to depart from the well-established precedent that a consumer must face a "real and immediate threat" of future injury to have standing to pursue injunctive relief. Plaintiffs have not alleged an intent to purchase the products in the future and therefore lack standing to seek injunctive relief. Accordingly, Plaintiffs' claims for injunctive relief are **DISMISSED WITH LEAVE TO AMEND**.

**III.    Defendant's Motion to Dismiss Pursuant to rule 12(b)(6)**

  A. <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "A court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (internal citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

B. <u>Discussion</u>

Defendant argues that Plaintiffs have failed to state a claim for violations of California's Unfair Competition Law, ("UCL"), Illinois Consumer Fraud Act ("ICFA"), Missouri Merchandising Practices Act, ("MMPA"), Massachusetts Consumer Protection Act ("MCPA"), and the Consumer Legal Remedies Act, ("CLRA"). To the extent Defendant's arguments regarding failure to state a claim are predicated on Defendant's assertion that Plaintiffs lack standing to sue under particular state statutes, those arguments are rejected based on the discussion set forth above. The remainder of Defendant's arguments are addressed below.

### 1. Plaintiffs' Claims Under the UCL

Defendant asserts that Plaintiffs[4] have alleged to allege both unfair and fraudulent conduct, and therefore cannot state a claim for violation of the UCL. (Doc. No. 22-1 at 22–23.) In opposition, Plaintiffs contend they have adequately stated a claim based on unfair and fraudulent conduct, and that Defendant confuses the unfair and unlawful prongs of the UCL. (Doc. No. 25 at 29.)

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code. § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1168 (E.D. Cal. 2013). An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgm't, Inc.*, 152 Cal.App.4th 1544, 1554 (2007); *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342, 1374 (2012).

As an initial matter, Defendant has conflated the meanings of unlawful and unfair conduct within the context of a UCL violation. Plaintiffs need not cite to a particular law

---

[4] Although each named Plaintiff asserts claims only under the state statutes where they reside, the Court refers to "Plaintiffs" collectively for consistency.

that was violated in asserting that Defendant engaged in unfair conduct. Plaintiffs have alleged that Defendant engaged in unfair conduct by charging excessive fees associated with shipping checks to Plaintiffs. Plaintiffs also refer to the Direct Marketing Association ("DMA") Guidelines, which provide guidance on best practices associated with shipping and assignment of related costs. (*See* Doc. No. 19 ¶¶ 35–49); (*see id.* ¶ 27) (alleging the "prices of the[] delivery methods bears no reasonable relationship to, and in fact, great exceed Defendant's costs incurred for delivery" and "therefore, contain improper and unethical profits for Defendant."); (*Id.* ¶ 111) ("Defendant breached [its] duty by engaging in acts that violate established public policy as recognized by the FTC and by DMA.").

At this stage in the proceedings, where the allegations in a plaintiff's complaint are taken as true, Plaintiffs have sufficiently alleged unlawful and unfair conduct. *See Plumlee v. Pfizer, Inc.*, No. 13cv0414, 2014 WL 4275519, at *5 (N.D. Cal. Aug. 29, 2014) ("A business practice violates the unfair prong of the UCL if it is contrary to 'established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.'").

Defendant next argues that Plaintiffs fail to allege any fraudulent conduct because there are no allegations in the complaint that members of the public are likely to be deceived. (Doc. No. 22-1 at 24.) Defendant additionally argues that the website through which its checks are sold is "straightforward, do[es] not promise only 'pass-through' costs, and plainly encompasses shipping, processing and packaging" such that "[n]o reasonable consumer could be deceived[.]" (*Id.*) Plaintiffs argue in opposition that the first amended complaint sufficiently alleges that members of the public are likely to be deceived, as required to state a claim for violation of the fraudulent prong of the UCL. (Doc. No. 25 at 31.)

Having thoroughly considered the allegations in the first amended complaint, the Court finds Plaintiffs have sufficiently alleged fraudulent conduct under the UCL. The Ninth Circuit has recognized that whether a business practice is deceptive will usually be

a question of fact not appropriate for decision on a motion to dismiss. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008); *see also Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134–35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."). Additionally, much of Defendant's argument in support of dismissal is directed at whether its website is in fact deceptive to consumers. (*See generally*, Doc. No. 22-1 at 8.) However, whether the website is actually deceptive exceeds the scope of the Court's review in ruling on a motion to dismiss. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) ("When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief.").

For these reasons, and in light of the allegations in the first amended complaint, Plaintiffs have adequately stated a claim for violation of the UCL for both unlawful and deceptive or fraudulent conduct.

### 2.  Plaintiffs' Claims Under the ICFA

Defendant raises very similar arguments in support of dismissing Plaintiffs' claim under the ICFA. Defendant contends that its shipping charges do not offend public policy, that it does not engage in immoral, unethical, oppressive, or unscrupulous conduct, and that its conduct does not cause substantial injury to consumers. (Doc. No. 22-1 at 25–27.)

To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Gershman v. Bayer HealthCare LLC*, No. 14CV05332, 2015 WL 2170214, at

*7 (N.D. Cal. May 8, 2015) (citing *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 267 (2002)).

The allegations in the first amended complaint withstand each of Defendant's challenges to the ICFA claim. Plaintiffs have sufficiently alleged that Defendant's shipping charges violate public policy and cause substantial injury to consumers, particularly when viewed as an allegedly ongoing business practice by Defendant. (*See* Doc. No. 19 ¶¶ 134–146.) Whether consumers were actually misled about the shipping and handling charges imposed by Defendant is a question premature for resolution at this stage. Accordingly, Plaintiffs' first amended complaint adequately states a claim under the ICFA.

### 3. Plaintiffs' Claims Under the MMPA

Defendant argues that Plaintiffs have failed to allege unfair or deceptive conduct under the MMPA, and that it is well established that fully disclosed fees are neither unfair nor deceptive. (Doc. No. 22-1 at 28.) Plaintiffs argue they have alleged sufficient facts to state a claim for relief under the MMPA, and that the allegations in the complaint stem from Defendants unethical profits, not simply the fact that Defendant profited in connection with its sale and shipping of checks. (Doc. No. 25 at 36–37.)

The MMPA prohibits deceptive or unfair practices "in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri." Mo.Rev.Stat. § 407.020.1. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1046 (N.D. Cal. 2011). The MMPA was enacted "to preserve fundamental honesty, fair play, and right dealings in public transactions," *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 160 (Mo. Ct. App. 2006), and prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020(1). To state a claim under the MMPA, a plaintiff must allege: (1) the purchase of merchandise; (2) for personal, family, or household purposes; and (3) an ascertainable

loss of money or property as a result of an act or practice declared unlawful under the MMPA. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 999 (S.D. Cal. 2014).

Considering the allegations in the first amended complaint, Plaintiffs have sufficiently alleged a violation of the MMPA. To the extent Defendant's arguments are predicated on a lack of unfair or fraudulent conduct of its part, or the veracity Plaintiffs' allegations regarding unlawful conduct, those argument fails for the reason set forth above. Although Defendant argues its fees were fully disclosed and therefore cannot form the basis of unfair or deceptive conduct, the authority relied on is inapposite. *Toben v. Bridgestone Retail Operations, LLC*, upon which Defendant primarily relies, arose in the context of summary judgment, an analysis far broader than that in connection with a motion to dismiss. 751 F.3d 888, 897 (8th Cir. 2014). Additionally, the portion of the *Toben* opinion Defendant relies on, was actually rejected on appeal. *See id.* ("As discussed, this finding misconstrues Toben's complaint, which includes the allegation that the shop supply fee is wholly unrelated to any supplies or services Bridgestone provides."). It was only after the court in *Toben* evaluated the undisputed evidence, that it concluded the fee at issue was not unfair or deceptive under the MMPA. *Id.* Given the different procedural posture of the authority relied on by Defendant, Defendant's arguments in support of dismissal are unpersuasive. Plaintiffs have adequately alleged a violation of the MMPA.

### 4.  Plaintiffs' Claims Under Ch. 93A

Defendant also argues dismissal of Plaintiffs' claim under Massachusetts Consumer Protection Act is appropriate because "Plaintiffs allegations are insufficient to allege any 'unfair' or 'deceptive' conduct under Ch. 93A." (Doc. No. 22-1 at 29.) According to Defendant, where prices are disclosed, and a consumer enters into an agreement freely, no violation of Ch. 93A can be stated. (*Id.*) Plaintiffs distinguish the authority relied upon by Defendant, and argue they have sufficiently stated a claim under Massachusetts law. (Doc. No. 25 at 35.)

Chapter 93A provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2 (1968). "Chapter 93A created new substantive rights by making conduct unlawful which was not unlawful under the common law or any prior statute." *Schubach v. Household Fin. Corp.,* 375 Mass. 133, 137, 376 N.E.2d 140 (1978) (quotation and citation omitted).

Plaintiffs have adequately alleged a violation of Ch. 93A. As with their other claims of deceptive and unlawful conduct, Plaintiffs detail the allegedly unlawful conduct such that the first amended complaint plausibly sets forth grounds for relief under Ch. 93A. *See Granfield v. NVIDIA Corp.*, No. C 11-05403, 2012 WL 2847575, at *5 (N.D. Cal. July 11, 2012) ("Because Plaintiff has alleged a business practice that is unfair to consumers, she has adequately stated a claim for a violation of Chapter 93A."). Thus, Defendant's challenge to Plaintiffs' claims under Ch. 93A fails.

### 5.  Plaintiffs' Claims Under the CLRA

Lastly, Defendant argues that Plaintiffs' claims under the CLRA fail. (Doc. No. 22-1 at 29–30.) Plaintiffs assert two claims under the CLRA. First, that Defendant violated section 1770(a)(5) because it represents that delivery charges are based on Defendant's cost of shipping, when in fact the shipping charges are not related to Defendant's shipping costs. (Doc. No. 19 ¶¶ 127–128.) Additionally, Plaintiffs allege that Defendant inserted unconscionable provisions into the contract. (*Id.* ¶¶ 127, 129.) With respect to the first alleged violation, Defendant contends "no reasonable consumer could ever read Deluxe's offers to represent that its delivery charges represent solely pass through costs of shipping[.]" (Doc. No. 22-1 at 30.)

This argument mirrors the argument raised in connection with Defendant's challenge to deceptive prong of Plaintiffs' UCL claim. Defendant's contention goes to the merits of Plaintiffs' claim—that is, whether a consumer would be misled by Defendant's representations. The appropriate inquiry in a motion to dismiss is not whether a plaintiff will succeed on the merits of its claims. As noted above, the Court is

limited to considering whether Plaintiffs' allegations plausibly state a claim for relief. Finding they do, for the reasons articulated above, this challenge to Plaintiffs' CLRA claim fails.

With respect to Plaintiffs' allegation that Defendant inserted an unconscionable provision into the contract, Plaintiffs argue that both the procedural and substantive elements of unconscionability are alleged in the first amended complaint. (Doc. No. 25 at 31.) The CLRA makes it an unlawful practice for "any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer" to "[i]nsert[ ] an unconscionable provision in the contract." Cal. Civ. Code § 1770. Under California law, a court may deem a contract provision unconscionable, and therefore unenforceable, only if it is both procedurally and substantively unconscionable. *See In re Apple iPod iTunes Anti-Trust Litig.*, No. C 05-00037, 2010 WL 2629907, at *6 (N.D. Cal. June 29, 2010); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal.App.4th 1224, 1245 (Cal.Ct. App. 2007).

Although Plaintiffs' opposition addresses both procedural and substantive unconscionability, those allegations are absent from the first amended complaint. (*Cf.* Doc. No 19 ¶¶ 129–130 *with* Doc. No. 25 at 31–32.) Plaintiffs fail to allege any facts to support the conclusion that Defendant inserted unconscionable terms into its representations regarding shipping costs. Accordingly, Plaintiffs' claims premised on a violation of section 1770(a)(19) are appropriately **DISMISSED**. *See Leong v. Square Enix of Am. Holdings, Inc.*, No. CV09-4484 , 2010 WL 1641364, at *10 (C.D. Cal. Apr. 20, 2010) ("As Plaintiffs have not alleged sufficient facts to claim that the user agreement is procedurally and substantively unconscionable, Plaintiffs also fail to allege a violation of § 1707(a)(19) of the CLRA."). Plaintiffs are granted leave to amend their complaint to allege facts supporting their contention of procedural and substantive unconscionability in violation of the CRLA.

///

///

**IV.    Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)**

  A. <u>Legal Standard</u>

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted). Whether to transfer a case pursuant to § 1404 is in the broad discretion of the district court and is appropriately determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion to transfer venue, the moving party must establish that (1) venue is proper in the original district; (2) the transferee district is one where the action could have been brought; and (3) the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1155–56 (N.D. Cal. 2009). "Generally, a defendant 'must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'" *In re Ferrero Litigation*, 768 F. Supp. 2d 1074, 1078 (S.D. Cal. 2011) (quoting *Decker Coal Co. v. Commonw. Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)), *superseded by statute on other grounds by* 28 U.S.C. § 1391.

In assessing whether a transfer of venue will serve the convenience of the parties and witnesses, courts consider the following factors: (1) the plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with an applicable law; (6) feasibility of consolidation with other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *Hawkins v. Gerber Products Co.*, 924 F. Supp. 2d 1208, 1213 (S.D. Cal. 2013).

///

B. <u>Discussion</u>

Defendant moves to transfer venue to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). (Doc. No 5. at 1.) Defendant alleges that a transfer would be more convenient to the parties and witnesses, and would also further the interest of justice. (*Id.*) Defendant argues that Plaintiffs' refiling in this District after extensive litigation in Missouri constitutes forum shopping. (Doc. No. 5-1 at 7.)

### 1.  Venue in Transferor and Transferee Courts

The first step in the Court's venue analysis is to determine whether the instant action could have been brought in the transferee district, the Eastern District of Missouri. Pursuant to 28 U.S.C. section 1391(b), a civil action may be brought in any of the following:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

This action could have been brought, and indeed was previously litigated, in the Eastern District of Missouri. As Defendant notes in support of transfer, it has sufficient minimum contacts with the transferee district to establish personal jurisdiction. (Doc. No. 5-1 at 13.) Accordingly, this action could have properly been filed in the Eastern District of Missouri. The Court now turns to evaluate whether the fairness factors weigh in favor of transferring venue.

### 2.  Fairness Factors

Once a court has determined that venue is proper in both the transferee and transferor courts, it then considers public factors relating to the interest of justice, as well as private factors focused on the convenience of the parties and witnesses. *Decker Coal*

*Co.*, 805 F.2d at 843. These factors include (1) the plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the ease of access to evidence; (4) the familiarity of each forum with the applicable law; (5) the feasibility of consolidation of claims; (6) the local interest in the controversy; and (7) the relative court congestion and time to trial in each forum. *Id.*; *Young v. TransUnion Corp.*, No. 13CV01473, 2015 WL 2384153, at *3 (S.D. Cal. May 19, 2015). The Ninth Circuit recognizes that the "'[w]eighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.'" *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988) (quoting *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

### a.  Plaintiff's Choice of Forum

Ordinarily, a strong presumption exists in favor of a plaintiff's choice of forum. *Piper Aircraft Co. v. Reyn*, 454 U.S. 235, 255 (1981). This presumption is overcome only when private and public interest factors "clearly" point toward an alternative forum. *Id.* However, in cases where a plaintiff's choice of forum lacks a significant connection to the transactions giving rise to the plaintiff's claims, a plaintiff's choice of forum is entitled to less weight. *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("Plaintiff's choice of forum, then, is not the final word.").

Defendant argues that Plaintiffs' choice of forum is entitled to minimal or no deference because this matter is a nationwide class action with little connection to California. (Doc. No. 24 at 14.) Defendant additionally argues that based on Plaintiffs' voluntary dismissal of the Missouri proceedings, Plaintiffs are engaging in forum shopping by refiling in this District. (*Id.* at 16.) Defendant contends the facts here are analogous to those in *Walker v. Discover Fin. Servs. Inc.*, 2010 WL 4269193, at *3 (N.D. Cal. Oct. 25, 2010), where the court concluded that forum shopping is reasonably inferred when the same plaintiffs are represented by the same law firm, file an almost identical lawsuit to that previously filed in another district. (*Id.* at 17.)

24

In opposition, Plaintiffs argue that as a class action, their choice of forum is only given less weight, not minimal weight. (Doc. No. 21 at 15.) Additionally, Plaintiffs note the addition of Plaintiff Byler, a California resident, who purchased Defendant's product from California makes this District an appropriate forum for resolution of Plaintiffs' claims. (*Id*. at 16.)

As a class action, Plaintiffs' choice of forum is entitled to less weight, as some of the named Plaintiffs and a substantial part of the putative class will likely reside outside of the forum state. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citations omitted) ("Although great weight is generally accorded plaintiff's choice of forum, [ ] when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight[.]"); *Fabus Corp. v. Asiana Exp. Corp.*, Case No. C-00-3172, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001) (noting "the degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint").

However, the Court does not consider Plaintiffs' refiling of this matter in this District to constitute forum shopping, at least not to the degree Defendant suggests. According to Defendant, Plaintiffs dismissed the Missouri proceeding and filed suit here in an attempt to obtain a more favorable forum. (Doc. No. 5-1 at 17–18.) Plaintiffs assert they made their intention of refiling in this District known to Defendant in the Missouri proceeding. Indeed, the record supports the conclusion that, regardless of Plaintiffs' intentions, Defendant was aware that Plaintiffs would seek to refile the claims asserted in the Missouri proceeding following a dismissal. (Doc. No. 21 at 8–9.) Despite declining to consent to a dismissal and stating it would oppose Plaintiffs' request, Defendant failed to take any action to prevent dismissal and refiling. This is true even after prompting from the Missouri court. (Doc. Nos. 5-8 at 10) (Doc. No. 21-6 at 2) ("It is hereby ordered that Defendant shall respond to Plaintiff's motion for leave of court to dismiss without prejudice . . . no later than February 22, 2016, of the Court will rule on Plaintiff's

unopposed motion and may dismiss Plaintiff's complaint without prejudice."). Given the extensive litigation that occurred in the Missouri forum, it is likely Defendant's failure to oppose or otherwise address Missouri Plaintiffs' request for a voluntary dismissal led to that request being granted. Accordingly, even if Plaintiffs sought dismissal with the intention of finding a more favorable forum, Defendant acquiesced through non-opposition.

Finding Defendant's allegation of forum shopping overstated, and considering this is a class action proceeding, the Court finds Plaintiffs' choice of forum is entitled to some, but not significant weight. Thus, this factor weighs slightly against transfer to the Eastern District of Missouri.

### b. Convenience of the Parties

Defendant argues that the Eastern District of Missouri is a more convenient forum for Plaintiffs, and cite the fact that two of the named Plaintiffs originally filed suit in Missouri. (Doc. No. 5-1 at 19.) Defendant also contends Missouri is more convenient because Defendant's headquarters are located in Minnesota, which is closer to Missouri, than California. (*Id.*) Plaintiffs cite the class action nature of this proceeding and argue that regardless of where the litigation occurs, all parties will be required to travel and litigate this proceeding outside of their home state. (Doc. No. 21 at 19.)

This factor weighs in support of transferring to the Eastern District of Missouri. Indeed, the parties have litigated a nearly identical set of cases, less the California and Massachusetts Plaintiffs, in Missouri. The addition of the California Plaintiff makes California a convenient forum as related to Plaintiff Byler. However, none of the other named Plaintiffs reside in California and Defendant does not appear to have any connection, either through headquarters, offices, or witnesses, in California. Thus, the Court finds this factor weighs in favor of transfer. However, because Defendant failed to oppose dismissal in the Missouri proceeding knowing that Plaintiff would refile, this factor is given slightly less weight in the Court's analysis.

### c. Convenience of the Witnesses

The convenience of a particular forum to witnesses is often recognized as the most important factor considered in ruling on a motion under §1404(a). *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009). In analyzing this factor, "courts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant." *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092–93 (N.D. Cal. 2002) (citing *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974)).

Defendant argues that this factor weighs in favor of transfer to the Eastern District of Missouri because both party and non-party witnesses are located in Missouri. (Doc. No. 5-1 at 20.) According to Defendant, employees who have authority over the content of its website and who would testify regarding such are located in Minnesota. (*Id*. at 21.) Defendant contends the majority of third party witnesses, such as the financial institutions from which Plaintiffs purchase checks, are located outside of California. (*Id*.)

Plaintiffs argue that the convenience of Defendant's employees should be discounted because the Court may compel their testimony if required. (Doc. No. 21 at 20.) Regarding the third party witnesses, Plaintiffs argue Defendant has failed to articulate the witnesses it intends to call and where those witnesses are located with specificity. (*Id*.)

Given Defendants general argument that Missouri would be more convenient, and in the absence of facts specific to non-party witnesses, this factor is neutral. *See Flint v. UGS Corp.*, No. C07-04640, 2007 WL 4365481, at *4 (N.D. Cal. Dec. 12, 2007) ("The Court cannot base a decision to transfer on speculation as to the relevance of potential, but unnamed, witnesses[.]").

### d.  Ease of Access to Evidence

Ease of access to evidence is generally not a predominate concern in evaluating whether to transfer venue because "advances in technology have made it easy for documents to be transferred to different locations." *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009).

16cv493 AJB (JLB)

Defendant acknowledges that this factor is neutral, despite the fact that many of Defendants records are located outside of California. (Doc. No 5-1 at 22.) Given that documentary evidence can likely be transferred electronically, and that this is a potential nationwide class action proceeding, ease of access to evidence will generally be of concern to one party or another. Accordingly, this factor is neutral.

### e.  Familiarity of Each Forum with Applicable Law

The parties concede that each forum is equally familiar with the law necessary to resolve Plaintiffs' claims. (Doc. No. 5-1 at 22; Doc. No. 21 at 23.) Thus, this factor is neutral.

### f.  Local Interest in Controversy

Both Plaintiffs and Defendant acknowledge that as a class action proceeding, this factor is neutral, and does not weigh either for or against transfer. (Doc. No. 5-1 at 23; Doc. No. 21 at 23.)

### g.  Court Congestion and Time to Trial

In analyzing a motion to transfer venue courts are also directed to consider the relative court congestion in each proposed venue. Defendant argues that this factor is neutral. (Doc. No. 5-1 at 23.) Plaintiffs argue this factor favors this District because, as of June 30, 2015, this District had fewer cases than the Eastern District of Missouri. As noted by Plaintiffs, this District has more judges then the Eastern District of Missouri and a slightly lower number of cases. (*See* Doc. No. 21 at 23.) Accordingly, this factor weighs against transfer.

### h.  Interest of Justice

Defendant argues the interests of justice favor transfer because it will discourage forum shopping. (Doc. No. 5-1 at 24.) As detailed in the preceding section, Defendant's allegation of forum shopping is overstated. The addition of two new Plaintiffs, from both California and another state, suggest Plaintiffs' refiling was not simply to obtain a more favorable forum. Additionally, even if this matter were transferred to the Eastern District, the procedural history of this case would be the same. That is, there is no mechanism by

which this Court can transfer the matter back to Missouri, before the same judge, and with the wealth of work and resources the parties already dedicated to the case. With the Missouri Plaintiffs' cases dismissed in the Eastern District of Missouri, transfer will not result in a more efficient resolution of Plaintiffs' claims or allow the parties to resume the Missouri proceedings. Accordingly, the interests of justice do not support a transfer to the Eastern District of Missouri, particularly in light of Defendant's failure to oppose Plaintiffs' request for a dismissal without prejudice.

Finding the majority of factors do not support transfer to the Eastern District of Missouri, the fairness factors weigh in favor of this matter proceeding in this District. Accordingly, Defendant's motion to transfer venue is **DENIED**.

## V.   Conclusion

For the reasons set forth above, Defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED** only as to Plaintiffs' claims for injunctive relief. Plaintiffs may file a second amended complaint to properly allege entitlement to injunctive relief within fourteen (14) days of the date of this order. Defendant's other challenges to the Court's subject matter jurisdiction over Plaintiffs' claims are **DENIED**.

Similarly, Defendant's challenges brought under Federal Rule of Civil Procedure 12(b)(6) are **GRANTED IN PART** as to Plaintiffs' CLRA claim premised on a violation of section 1770(a)(19), and **DENIED** as to Plaintiffs' remaining claims. Plaintiffs may file an amended complaint appropriately alleging a violation of the section 1770(a)(19) within fourteen (14) days of the date of this order.

Defendant's motion to transfer venue is **DENIED**, as the convenience of the parties and the interests of justice do not require that this matter be transferred to the Eastern District of Missouri.

**IT IS SO ORDERED**.

Dated:  August 19, 2016

Hon. Anthony J. Battaglia
United States District Judge

29

16cv493 AJB (JLB)